UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| TAMMY Y. GRUBB, )<br>      Plaintiff )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>  Commissioner of Social Security )<br>      Defendant ) | 1:12-cv-322<br>MATTICE/CARTER |

REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying the plaintiff a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's Motion for Summary Judgment (Doc. 26) and Defendant's Motion for Summary Judgment (Doc. 27).

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

Plaintiff's Age, Education, and Past Work Experience

Plaintiff was 46 years of age as of her alleged onset date (Tr. 46,158,160) and was 48 years of age on the date of the administrative hearing (Tr. 60). She has at least a high school education, and is able to communicate in English, and has past relevant work experience as a manager of a convenience store, pre-K instructor, and fast food restaurant manager (Tr. 46, 177).

Applications for Benefits

In October 2009, Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income alleging an onset date of February 20, 2009 (Tr. 36, 158, 160). The agency denied the application initially, upon reconsideration, and on May 10, 2011, by an administrative law judge's (ALJ) decision (Tr. 33-48, 95-98). The Appeals Council denied Plaintiff's request for review (Tr. 1-7), and the ALJ's decision is now ripe for review under 42 U.S.C. § 405(g).

Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); Abbot v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. Id. If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; Skinner v. Secretary of Health & Human Servs., 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national

economy which he/she can perform considering his/her age, education and work experience. Richardson v. Secretary, Health and Human Servs., 735 F.2d 962, 964 (6th Cir. 1984); Noe v. Weinberger, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); Landsaw v. Secretary, Health and Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. Ross v. Richardson, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994) (citing Mullen v. Bowen, 800 F.2d 535, 548 (6th Cir. 1986)); Crisp v. Secretary, Health and Human Servs., 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since February 20, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: status-post thyroidectomy for Hashimoto's thyroiditis, migraine headaches, degenerative disc disease, morbid obesity, major depressive disorder and adjustment disorder with anxiety and depressed mood (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of

impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant would be limited to occasionally lifting and carrying up to twenty pounds, frequently lifting and carrying ten pounds, could stand, walk or sit for six hours in an eight-hour day, could never climb ladders, ropes and scaffolds, could occasionally climb ramps and stairs, stoop and crouch, balance, kneel and crawl, should avoid concentrated exposure to fumes, odors, gases, avoid hazards, could not carry out detailed or complex instructions and was capable of infrequent social interaction.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 22, 1962 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CDFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform    (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 20, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 38-47).

Issues Presented

1) Whether the ALJ's decision is based on substantial evidence because he erred in his evaluation of the opinion of Dr. Charles Han.

2) Whether the ALJ failed to properly evaluate a March 30, 2010, evaluation of Plaintiff's lumbar spine.

Relevant Facts

Plaintiff's medical treatment is set forth in detail in the ALJ's Administrative Decision (Tr. 36-48) and in Plaintiff's Brief (Doc 26-1, pp. 6-20). I will not repeat it here but will refer to relevant portions of it in the analysis section.

Analysis

The Opinion of Dr. Charles Han

Plaintiff first contends the ALJ did not properly assess the opinion of treating physician Y. Charles Han, M.D. (Doc. 26-1, Plaintiff's Memorandum at 21-26). For reasons that follow, I conclude the ALJ's assessment was supported by substantial evidence. In evaluating the medical source opinions of record, an ALJ will determine what weight to give a medical opinion based on the length, nature and extent of the treatment relationship the medical source had with the claimant; the evidence the medical source presents to support his opinion; the opinion's consistency with the record as a whole; the specialty of the medical source; and other factors. See 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013). However, opinions on some issues, such as whether the claimant is unable to work and the claimant's RFC, "are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20

5

C.F.R. §§ 404.1527(e), 416.927(e); see Social Security Ruling (SSR) 96-5P, 1996 WL 374183 (S.S.A.). As the Sixth Circuit has noted: "The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004) (quotations and brackets omitted). In his decision the ALJ expressly considered Dr. Han's treatment notes and weighed his opinion in accordance with the relevant regulations and case law.

In discussing Dr. Han's records and opinion, the ALJ acknowledged Plaintiff received treatment from Dr. Han from March 2010 to January 2011 for complaints of severe headaches and related symptoms (Tr. 43-44). The record before the ALJ shows Dr. Han saw Plaintiff four times between March 2010 and January 2011, primarily to provide steroid injections for headache relief (Tr. 43-44, 458-63, 546).[1] The ALJ noted Dr. Han opined in a July 2010 visit that Plaintiff has had "very disabling" migraine headaches "her whole life" and had underlying cervical spine degenerative disease and lumbar spondylosis, and should apply for long-term disability benefits (Tr. 44, 463). The ALJ additionally discussed two questionnaires Dr. Han completed on July 26, 2010 (Tr. 44, 496-501). In one questionnaire, Dr. Han opined Plaintiff had daily, severe migraine headaches that prevented Plaintiff from working eight hours a day and

---

[1] As the Commissioner notes, although Plaintiff also submitted evidence to the Appeals Council after the ALJ's decision reflecting three more visits to Dr. Han between April and September 2011, she does not argue that this evidence warrants remand under sentence six of 42 U.S.C. § 405(g), thus waiving any such argument (Tr. 568-73). See Hollon ex rel. Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 491 (6th Cir. 2006); Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff did not raise an issue regarding the Appeals Council evidence in the district court or in her initial brief and, therefore, she has waived any such issue before this Court. See Barker v. Shalala, 40 F.3d 789, 793-94 (6th Cir. 1994). If these other visits reflect a deteriorating condition, Plaintiff can file a new claim for benefits.

6

five days a week and would require Plaintiff to miss more than sixteen days in a three-month period (Tr. 44, 496). In the other questionnaire, Dr. Han opined Plaintiff could not sit, stand, or walk at all because she could not stand up or sit during headache attacks, needed to elevate her lower extremities to relieve pain, needed five to eight hours of bed rest during a normal workday, and had a medical need to be absent from a full-time work schedule on a chronic basis (Tr. 44, 499-501). The ALJ gave no weight to Dr. Han's opinions because they were unsupported by the objective medical evidence, inconsistent with the other record evidence, and appeared to be based instead on Plaintiff's subjective complaints (Tr. 44).

The question is whether substantial evidence supports the ALJ's consideration and rejection of Dr. Han's opinions. In discussing the lack of objective support for Dr. Han's opinions, the ALJ noted that despite Dr. Han's opinion that Plaintiff has had "very disabling" migraine headaches her "whole life," the rest of the record evidence fails to show a lifelong history of significant treatment for migraine headaches (Tr. 44, 463). Although Plaintiff appears to contend this "belief" of Dr. Han's that Plaintiff has had "very disabling" migraine headaches her "whole life" is no more than an erroneous "suggestion" made in the ALJ's description of Dr. Han's opinions, (Doc. 26-1, Plaintiff's Memorandum at 24), this is an accurate direct quote from Dr. Han's July 13, 2010 treatment note. In that note he states he believes Plaintiff needs to apply for long-term disability and that she has had very disabling migraine headaches her whole life (Tr. 463). The ALJ further noted that Dr. Han's recommendation that Plaintiff apply for long-term disability benefits appeared to be premised in part on his belief that she had cervical degenerative disc disease and lumbar spondylosis, but that Dr. Han's records failed to show any confirmation of this belief regarding Plaintiff's spinal conditions (Tr. 44, 463).

7

Plaintiff argues Dr. Han's treatment notes reflected "thorough examinations and clinical evaluation of the Plaintiff."   The ALJ's decision shows he considered Dr. Han's treatment notes and exam findings and then concluded Dr. Han's opinions were not supported by the objective evidence and in assessing Plaintiff's RFC (Tr. 43-44).   The ALJ noted Dr. Han's exam in March 2010 showed moderate focal tenderness in the skull base and bilateral paraspinal muscles, but also normal cranial nerve testing, no focal swelling in the temporal arteries, and steady walking without any Romberg sign (Tr. 43, 461).   Dr. Han additionally found normal sensory testing and normal muscle strength and tone, though range of motion in the bilateral paraspinal muscles was reduced by fifteen degrees (Tr. 461).   As the ALJ also noted, Plaintiff was diagnosed with a moderate degree of cervicogenic headache secondary to bilateral occipital neuralgia and myofascial pain and migraine headaches, but also reported feeling pleased with the relief she experienced from the injections (Tr. 43, 461-62).   The ALJ acknowledged Dr. Han's July 13, 2010, exam showed Plaintiff walked slow and had a positive Romberg sign, but also noted it still showed no truncal ataxia or dysmetria and normal cranial nerve testing (Tr. 43, 463).   Accordingly, while the ALJ determined the objective findings did not support Dr. Han's opinions that Plaintiff was wholly unable to work full-time and had no ability to stand, walk or sit, the ALJ still found Plaintiff was limited to an RFC to do a reduced range of light work (Tr. 41, 43-44).

As the Commissioner argues, much of the evidence Plaintiff cites in support of Dr. Han's opinions are actually Dr. Han's notations regarding Plaintiff's own reports of pain and responses in testing indicating pain, i.e., Plaintiff's subjective complaints. Plaintiff notes Dr. Han never stated he believed Plaintiff was malingering or exaggerating. However, as reflected in the ALJ's

8

decision, the ALJ found Plaintiff's subjective complaints lacked credibility given their inconsistency with other evidence of record (Tr. 42-46). In his discussion of the evidence considered in his credibility determination and RFC assessment, the ALJ points out that the medical evidence showed conservative treatment of Plaintiff's back condition with only physical therapy, generally good cranial nerve testing, and effective treatment of her migraines with steroid injections. He also referred to the opinions of the state agency reviewing medical consultants assessing Plaintiff with the ability to do a range of light work with some restrictions on detailed or complex instructions and social interaction (Tr. 42-46, 258-61, 351, 356-62, 458, 461-63, 516, 518-22). The ALJ noted Plaintiff's complaints were inconsistent with her reported daily activities, which included cooking and light chores, playing with her grandson and teenaged stepchildren, playing video games, using the internet to search for jobs and take surveys, and doing arts and crafts for two to three hours a day, two to three times a week (Tr. 46, 201, 203, 206, 332-33).

Plaintiff next notes the ALJ misstated the number of times Dr. Han saw Plaintiff as of July 13, 2010 (Tr. 44, Pl.'s Br. at 25). In discussing Dr. Han's July 13, 2010, opinion that Plaintiff should apply for long-term disability benefits and has had disabling migraines her whole life, the ALJ mistakenly noted Dr. Han had seen Plaintiff twice at this point (Tr. 44). As the Commissioner concedes, she saw Dr. Han three times at this point (Tr. 458-63). Plaintiff argues that this misstatement of two versus three visits is reversible error because it "devalues Dr. Han's opinion as to the nature, length, and extent of the [sic] Dr. Han's treating relationship with Plaintiff is an important factor in the evaluation of opinion evidence." (Doc. 26-1, Plaintiff's Memorandum at 25). I disagree. Dr. Han's July 13, 2010 opinion indicating

9

Plaintiff qualifies for disability benefits and has experienced a disabling condition her whole life is not a medical opinion, but instead an opinion on an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-5p, 1996 WL 374183. Accordingly, it is not entitled to controlling weight or special significance, regardless of the nature, length, and extent of Dr. Han's treating relationship with Plaintiff at the time he rendered this opinion. See SSR 96-5p, 1996 WL 374183. I agree with the argument advanced by the Commissioner. The ALJ's misstatement regarding the number of visits Plaintiff made as of July 13, 2010, does not render inaccurate his observations on the nature and extent of Dr. Han's treating relationship with Plaintiff. The ALJ still generally described the nature and extent of Dr. Han's treating relationship when he noted Plaintiff received steroid injections from Dr. Han for complaints of headaches and related symptoms, summarized Dr. Han's exam findings, and observed Plaintiff reported feeling relief with the injections (Tr. 43). The ALJ noted Dr. Han's opinion in this visit lacked support from the record, and was in part based on speculative diagnoses of Plaintiff's back condition (Tr. 44). I conclude the ALJ's misstatement regarding the number of visits she made to Dr. Han as of July 13, 2010, did not constitute error requiring reversal or remand. See Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination"). Remand to have the ALJ further consider Dr. Han's July 13, 2010 opinion in light of the fact that she had visited him three times rather than two at the time he provided this opinion would serve no practical purpose, would not alter the ALJ's findings, and would be a waste of judicial and administrative resources. This was an opinion on an issue reserved to the Commissioner, it was arguably unsupported by the record, and the ALJ accurately noted the nature and extent of the treating relationship in

weighing this opinion in addition to weighing the supportability and consistency of this opinion with the other record evidence including Plaintiff's daily activities and the opinions of the state agency physicians.

Plaintiff also contends the ALJ erred in finding Dr. Han's opinion inconsistent with her reported daily activities (Doc. 26-1, Plaintiff's Memorandum at 25-26). Plaintiff contends that her reported activities, which involve cooking a full course meal daily, sitting while using the internet for several hours a day, and providing care to her teenaged stepdaughters and three-year-old grandson, are not actually inconsistent with Dr. Han's opinion that Plaintiff is unable to sit, stand, or walk at all in an eight-hour workday (Tr. 44, 332-33, 499). Plaintiff argues Dr. Han's opinion is meant to be read as imposing these sitting, standing, and walking limitations only when Plaintiff is experiencing a headache attack (Doc. 26-1, Plaintiff's Memorandum at 26). Even if that is so, Dr. Han issued this opinion on the same day he also submitted an opinion that Plaintiff had "daily, severe" headaches that rendered her incapable of working eight hours a day, five days a week (Tr. 496) (emphasis added). This effectively was an opinion that would apply daily. If the ALJ had accepted and given controlling weight to Dr. Han's opinion, he would have found Plaintiff disabled, but he did not do so.

Plaintiff argues the ALJ erred in giving greater weight to the state agency reviewing physicians over Dr. Han's opinion (Doc 26-1, Plaintiff's Memorandum at 26). Although the regulations list a claimant's treating relationship and examining relationship with a medical source as two factors to consider in weighing medical opinion evidence, they also list supportability, consistency with the rest of the record, and other factors to consider in weighing opinion evidence. See 20 C.F.R. §§ 404.1527, 416.927. As the Commissioner notes, the

11

Sixth Circuit recently upheld an ALJ's decision to give greater weight to a state agency reviewing physician's opinion over a treating physician's opinion in Hill v. Comm'r of Soc. Sec., 560 F. App'x 547, 550 (6th Cir. 2014). The Sixth Circuit determined the ALJ did not err because substantial evidence supported the opinion of the state agency reviewing physician, but did not support the treating physician's opinion.

In this case, the ALJ determined the opinions of the state agency reviewing medical consultants, who opined Plaintiff could do a range of light work with restrictions to simple work and infrequent social interaction, were consistent with the record as a whole and gave them great weight (Tr. 44-45, 351, 356-62, 516, 518-22). As reflected in the ALJ's discussion of the record evidence, Plaintiff's treatment notes between January 2009 and July 2010 showed findings consistent with an RFC to do a range of light work as the state agency medical consultants opined, including only mild to minimal lumbar spine imaging results, normal neck imaging results, unremarkable brain MRI results, generally good sensory testing, muscle strength, and motor function, recommendations of conservative treatment for Plaintiff's back pain with narcotics and physical therapy, reports of pain relief with steroid injections, and a mental status assessment that showed unremarkable findings (Tr. 42-44, 259-62, 333, 354, 461-62 525-26). The ALJ determined Dr. Han's opinions were not supported by the objective record evidence or the other record evidence, such as Plaintiff's own reported daily activities, and accordingly gave them no weight (Tr. 44).

Plaintiff also notes the ALJ considered the opinion of senior psychological examiner David Caye, M.S., who is not an acceptable medical source, in assessing her claim and RFC (Tr. 45, 331-34, Pl.'s Br. at 26). Mr. Caye examined Plaintiff on March 9, 2010, and found normal

12

orientation and judgment but marginal insight, assessed her with low average cognitive skills, and opined Plaintiff had no restrictions in understanding, mild restrictions in concentration, and moderate restrictions in social interaction, persistence, and problem-solving (Tr. 45, 333-34). The ALJ acknowledged Mr. Caye was not an acceptable medical source, but nevertheless found his opinion was consistent with the medical record (Tr. 44).

I conclude that it was proper for the ALJ to consider and weigh Mr. Caye's evaluation and opinion as part of his assessment of Plaintiff's RFC. The regulations state that the agency will purchase a consultative examination "only from a qualified medical source." 20 C.F.R. §§ 404.1519g(a), 416.919g(a). To be "qualified," a medical source "must . . . have the training and experience to perform the type of examination or test" requested. 20 C.F.R. §§ 404.1519g(b), 416.919g(b). As the Commissioner argues, Tennessee statutes indicate a senior psychological examiner "shall be considered a health service provider" able to engage in interviewing or administering and interpreting tests of mental abilities and aptitudes for the purpose of psychological evaluation, the diagnosis of mental disorders, psychotherapy, and behavior analysis without supervision. Tenn. Code Ann. § 63-11-202(c) (2014). Accordingly, although Mr. Caye was not an acceptable medical source, he was a qualified medical source. An ALJ may consider evidence from sources who are not identified as acceptable medical sources to show the severity of an individual's impairments and how such impairments affect the individual's functioning. See 20 C.F.R. §§ 404.1513(d), 416.913(d), SSR 06-03p, 2006 WL 2263437 (S.S.A.).

The ALJ's decision shows he properly considered all the opinion evidence of record, including Dr. Han's opinions. Here, as in many cases, there was evidence to support Plaintiff's

position but also evidence that opposed it. In his discussion of the evidence, the ALJ concluded it supported his RFC finding, and that Dr. Han's opinions were unsupported by the objective record evidence, appeared to be based primarily on Plaintiff's subjective complaints, which the ALJ had determined were not fully credible and were inconsistent with the record, including Plaintiff's reported daily activities. The ALJ also properly considered the opinions of Mr. Caye and the state agency reviewing medical consultants, noting their consistency with the record as a whole. I conclude substantial evidence supports the ALJ's consideration of the opinion evidence and his RFC assessment limiting Plaintiff to a range of light work with some postural, environmental, and mental limitations.

<u>The March 30, 2010, Evaluation of Plaintiff's Lumbar Spine</u>

Plaintiff next argues the ALJ did not properly consider a January 2009 lumbar MRI in assessing her complaints of disabling back pain (Doc. 26-1, Plaintiff's Memorandum at 26-27). The ALJ's decision, however, shows he specifically considered Plaintiff's complaints of back pain along with the medical evidence relating to Plaintiff's back pain, including the MRI Plaintiff references, in assessing the credibility of Plaintiff's subjective complaints and her RFC (Tr. 42-46). I conclude substantial evidence supports the ALJ's assessment of the credibility of Plaintiff's complaints of back pain.

When a claimant alleges disability based on subjective complaints, she must present objective medical evidence of an underlying medical condition. <u>See</u> 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b); <u>Walters v. Comm'r of Soc. Sec.</u>, 127 F.3d 525, 531 (6th Cir. 1997); SSR 96-7p, 1996 WL 374186 (S.S.A.). If the claimant establishes he has an impairment that could reasonably be expected to produce his alleged symptoms, the ALJ must evaluate the intensity

14

and persistence of the claimant's alleged symptoms and their effect on his ability to work. See 20 C.F.R. §§ 404.1529(c), (d); 416.929(c), (d); Walters, 127 F.3d at 531; SSR 96-7p, 1996 WL 374186. "The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis." Walters, 127 F.3d at 531; see also Casey, 987 F.2d at 1234 ("Since the ALJ has the opportunity to observe the demeanor of a witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference.") (quotations omitted).

After noting Plaintiff alleged and sought treatment for back pain, the ALJ noted that while Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, he determined her statements concerning the intensity, persistence, and limiting effects of those symptoms were not fully credible (Tr. 42, 46). The ALJ's decision shows he considered the record as a whole in assessing the credibility of Plaintiff's complaints of back pain, including Plaintiff's medical records and specifically a January 2009 lumbar MRI and other treatment for back pain from Barry Vaughn, M.D. between January and April 2009 (Tr. 42). See 20 C.F.R §§ 404.1529(c)(2), (3)(iv)-(v); 416.929(c)(2), (3)(iv)-(v)(listing objective medical evidence, medication, and other treatment as factors to consider in evaluating a claimant's statements regarding pain and other symptoms). The ALJ expressly noted Dr. Vaughn's initial January 23, 2009 exam showed some limitations in range of motion due to discomfort, tenderness, and positive straight leg raising (Tr. 42, 260). However, Dr. Vaughn also found grossly intact motor function and intact deep tendon reflexes and ultimately recommended conservative treatment with physical therapy and anti-inflammatory medication

15

(Tr. 42, 260-61).  As the ALJ discussed, a January 29, 2009, MRI ordered by Dr. Vaughn reflected only a "tiny" posterocentral disc bulge and annular tear at L5-S1, and "minimal to mild" bilateral facet arthrosis at L4-L5 and L5-S1, with no disc herniation or nerve root impingement (Tr. 42, 262).  In a follow-up visit in February 2009, Plaintiff reported physical therapy helped a little, and Dr. Vaughn continued to recommend the same course of conservative treatment (Tr. 259).

As the Commissioner argues, Dr. Vaughn's last two visits with Plaintiff are also unhelpful in providing support for her allegations of disabling back pain.  As the ALJ discussed, Plaintiff followed up with Dr. Vaughn again in March 2009 and again reported that physical therapy helped, but also stated she was not able to attend any additional therapy because she was unemployed (Tr. 42, 258).  Upon examination, Dr. Vaughn noted tenderness across the lumbosacral junction but found Plaintiff grossly intact neurologically (Tr. 258).  Dr. Vaughn prescribed Darvocet but informed Plaintiff that narcotics "are not the answer" and that he would not continue to prescribe narcotics unless she attended physical therapy or did something to actively aid her situation (Tr. 42, 258).  In Plaintiff's last visit in April 2009, Plaintiff again had tenderness upon examination and had positive straight leg raising, but also had grossly intact motor function, deep tendon reflexes, and sensory testing (Tr. 257).  As the ALJ noted, Dr. Vaughn diagnosed Plaintiff with low back pain, lumbar degenerative disc disease, and right lower extremity sciatica, and recommended a trial of epidural steroid injections (Tr. 42, 257).

Based on Dr. Vaughn's records and the other record evidence, the ALJ determined Plaintiff's complaints were not fully credible (Tr. 42-46).  In addition to the generally intact neurological testing and conservative treatment reflected in Dr. Vaughn's records, the ALJ also

16

noted the state agency reviewing medical consultants assessed Plaintiff with an ability to do a range of light work, which the ALJ found was consistent with the record (Tr. 44-45, 356-62, 518-22). The ALJ further noted that in contrast to Plaintiff's complaints of disabling back pain and other symptoms, her reported daily activities included cooking, light housework, sitting for several hours a day using the internet and watching television, preparing crafts for two to three hours a day, two to three days a week, and playing with and caring for her two teenaged stepdaughters and three-year-old grandson (Tr. 46, 332-33). Although not dispositive, a claimant's activities may show that the claimant's symptoms are not as limiting as she alleged. See 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); SSR 96-7p, 1996 WL 374186; Walters, 127 F.3d at 532; Blacha v. Sec'y of Health & Human Servs., 927 F.2d 228, 231 (6th Cir. 1990).

I concede that this is a close case, but conclude the record provides substantial evidence to support the ALJ's consideration of the opinion evidence of record and Plaintiff's subjective complaints in assessing Plaintiff's functional limitations. Despite Plaintiff's allegations of disabling back pain and Dr. Han's opinions that Plaintiff was unable to perform full time work, the record evidence, including Dr. Han's exam findings, Dr. Vaughn's treatment records and lumbar MRI, and Plaintiff's own reported daily activities, and the opinions of the state agency physicians provides substantial evidence for the ALJ's conclusion that Plaintiff still retained the ability to do a range of light work with some postural, environmental, and mental limitations (Tr. 42-46). The Commissioner is charged with the duty to weigh the evidence, resolve material conflicts in testimony, and determine the case accordingly. See Richardson v. Perales, 402 U.S. 389, 399 (1971); Walters, 127 F.3d at 528; Mullins v. Sec'y of Health & Human Servs., 836 F.2d 980, 984 (6th Cir. 1987). Even if this Court disagrees with the ALJ's resolution of the factual issues, and

17

would resolve those disputed factual issues differently, his decision must be affirmed where it is supported by substantial evidence in the record as a whole. See Warner 375 F.3d at 390. Here, although the record contains some evidence of disability, there is evidence on the other side and I conclude substantial evidence supports the ALJ's decision that Plaintiff was not disabled.

## Conclusion

Having carefully reviewed the entire administrative record and the briefs of the parties filed in support of their respective motions, I conclude there is substantial evidence in the record to support the findings of the ALJ and the decision of the Commissioner, and neither reversal nor remand is warranted on these facts. Accordingly, I RECOMMEND:

(1) The plaintiff's motion for summary judgment (Doc. 26) be DENIED.

(2) The defendant's motion for summary judgment (Doc. 27) be GRANTED.

(3) The case be DISMISSED. [2]

S /William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).